JOURNAL ENTRY AND OPINION
This is an appeal from a jury verdict following trial before Visiting Municipal Judge Salvatore R. Calandra, that found appellant Douglas Martin guilty of resisting arrest. Martin, who the jury found not guilty of aggravated disorderly conduct, claims he did not commit a crime suitable for arrest and challenges the sufficiency of the evidence that he resisted a lawful arrest. We dismiss this appeal as moot because Martin voluntarily completed the sentence imposed for his misdemeanor conviction.
From the record we glean the following: On October 29, 2000, Martin and Dale Schultheis were part of a crowd outside the northeast gate of the Cleveland Browns Stadium expecting to see the game against the Cincinnati Bengals. Detective Herbert Ross and Officer Marc Kruse, of the Cleveland Police Department, were off duty in plain clothes and working for Tenable Security on the Stadium property. It is undisputed that Schultheis was holding four game tickets and offering them for sale.
Officer Kruse claimed that he approached Schultheis, began to negotiate a purchase price for the tickets and, when it was apparent that Schultheis was trying to "scalp" the tickets, Kruse confiscated them and displayed his badge which hung on a string around his neck. He stated, while in the presence of Detective Ross, who also displayed his badge, that he explained to Schultheis that selling tickets on Stadium property was against Cleveland Browns policy, that the tickets were confiscated and violators would receive written notification from the Browns that such conduct was unacceptable. When Martin saw the tickets being taken from his brother-in-law, he stepped between Schultheis and the officers and demanded to "see some I.D." from the them. According to Officer Kruse, Martin yelled this request, moved in front of Schultheis and disrupted his conversation with Schultheis.
Detective Ross stated that Officer Kruse approached Schultheis and that he stayed slightly behind him in order to watch the sizable crowd entering the stadium and ensure his partner's safety. He claimed that, when Officer Kruse identified himself as law enforcement and confiscated the tickets, he also pulled his badge out so that it was in plain view when Martin demanded to "see some I.D." from Officer Kruse. Detective Ross said that he then told Martin that he and Kruse were Cleveland Police officers, and ordered Martin to step back. According to Detective Ross, Martin was yelling his demands to "see some I.D.," told him that he wanted to make sure his friend was not being "taken" for his tickets, kept demanding to see identification, and interfered with Officer Kruse's conversation with Schultheis by stepping between them.
After Detective Ross had ordered Martin to stay back a third time, he warned him that if he did not comply he would be arrested. Then Martin apparently demanded to "see some [expletive] I.D.," and Detective Ross placed him under arrest and secured one of his wrists with a handcuff. Although Martin, according to Detective Ross, attempted to pull away he kept a grip on the other handcuff and, eventually, the two policemen succeeded in securing it on Martin's other wrist.
Detective Ross testified that he arrested Martin because he was yelling and causing a disturbance by loudly interjecting himself into the conversation, as an unknown aggressor. He stated that Martin's conduct, in stepping between Schultheis and Officer Kruse, directly in the officer's personal space, created a risk to the officer's safety, especially in light of the size of the crowd entering the stadium, because both policemen were undercover. By causing such a commotion, Detective Ross contended that Martin created a risk that others in the immediate area, who would note his and Officer Kraus' plain clothing but not notice their police badges, might intervene in the confrontation.
Schultheis claimed that Officer Kruse approached him about buying his tickets, and when they had agreed upon a price, took the tickets out of his hand, quickly flashed a badge, which he subsequently re-hid in his shirt, and identified himself as "Cleveland Police." He denied that Detective Ross displayed any identification or badge whatsoever, and did not identify himself as a police officer; Schultheis claimed that, when Martin approached Detective Ross and asked to see his I.D. in a "very firm, strong tone," Martin was not swearing or making any violent or aggressive movements toward him. According to Schultheis, the Detective replied that he did not have to show his badge or I.D., told Martin that if he asked for I.D. again, he was going to be arrested, and then grabbed for Martin who was subsequently handcuffed. Schultheis stated Martin never approached Officer Kruse or attempted to interfere with their conversation, but rather, Detective Ross escalated the situation into a confrontation which could have been avoided if he would have simply shown his badge and identified himself as a police officer.
Martin testified that he noticed a man take the tickets away from Schultheis, and that the man's companion, who never identified himself as a police officer, informed him that it was against Browns policy to sell tickets on Stadium grounds. Martin stated that he thought the two men were either private Browns security or persons attempting to dupe Schultheis out of the tickets without paying for them, because the one who later identified as Detective Ross kept telling him that he did not have to show any I.D. every time Martin asked for it. He contended that, without ever moving to approach anyone, Detective Ross told him that if he asked again, he would be going to jail. When Martin replied "What for?" he claims that Detective Ross tried to grab him from behind to throw him, face first, onto the concrete. He claimed that he was handcuffed after a bit of struggle, but thereafter offered no resistance whatsoever, verbal or otherwise.
Martin was charged in Cleveland Municipal Court Case with one count of aggravated disorderly conduct, in violation of Cleveland Codified Ordinance (C.C.O.) 605.03(A)(1), and one count of resisting arrest, in violation of C.C.O. 615.08. Both at the close of the City's case and his defense, he moved for a directed acquittal on the resisting arrest charge, arguing that the aggravated disorderly conduct arrest he was charged with "resisting" was not lawful.
A jury found him guilty of resisting arrest but not guilty of aggravated disorderly conduct. The judge also denied his post-trial written motion for acquittal based on the argument that the City presented insufficient evidence of a lawful arrest and he was sentenced to a $250 fine, costs, and thirty days jail, with sentence suspended, with no referral to a probation department or mention of an imposition of any type of community control sanction. He paid the fine and costs and now appeals in two assignments of error.
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIM.R. 29(A) AT THE CLOSE OF THE CITY'S CASE AND AT THE CLOSE OF THE DEFENDANT'S CASE.
 II. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL FILED AFTER THE TRIAL PURSUANT TO CRIM.R. 29 IN THAT THE FINDING OF GUILTY BY THE JURY WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.[1]
On the day this case was heard, the City moved to dismiss it as moot. The City contends that, since Martin was convicted of a misdemeanor and has completely satisfied his fine, he has no stake in the reversal of his conviction and will suffer no collateral legal disability. Martin has not responded to the City's motion.
The issue of mootness of a criminal case arises only if it is shown that there is no possibility that any collateral legal consequences will be imposed upon the basis of the challenged conviction.[2] "[W]here a criminal defendant, convicted of a misdemeanor, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction."[3] This rule is in contrast to a situation in which a defendant appeals a felony conviction, where the collateral civil disability or loss of civil rights springs from the defendant's resulting label of "felon." According to the Ohio Supreme Court,
 "A person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal."[4]
No such stigma attaches to one convicted of a misdemeanor offense. As such, unless one convicted of a misdemeanor seeks to stay the sentence imposed pending appeal or otherwise involuntarily serves or satisfies it, the case will be dismissed as moot unless the defendant can demonstrate a particular civil disability or loss of civil rights specific to him arising from the conviction.[5] Martin has not provided this court with any civil disability or loss of civil rights he will or has suffered as a result of this conviction.
Appeal dismissed.
It is ordered that the appellee recover from appellant costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS. MICHAEL J. CORRIGAN, P.J., CONCURS INJUDGMENT ONLY.
[1] While Martin does phrase Assignment of Error II as an inquiry as to the manifest weight of evidence presented at trial, both his post-trial motion to the court below and his arguments upon appeal to this court focus on the sufficiency of the evidence presented.
[2] State v. Wilson (1975), 41 Ohio St.2d 236, 237, 325 N.E.2d 236,237.
[3] State v. Golston (1994), 71 Ohio St.3d 224, 226, 643 N.E.2d 109,110. See, also, State v. Berndt (1987), 29 Ohio St.3d 3,504 N.E.2d 712.
[4] State v. Golston, supra, at syllabus.
[5] Oakwood v. Sexton (1983), 10 Ohio App.3d 160 461 N.E.2d 22, relying on State v. Wilson, supra.